Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| SUPER ASPHALT PAVEMENT CORP. Y OTROS<br><br>*Demandantes*<br><br>v.<br><br>TALLABOA PR, LLC Y OTROS<br><br>*Demandados-Recurridos* | TA2026CE00548 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2025CV06164<br><br>Sobre: Cobro de Dinero-Ordinario y otros |
| TALLABOA PR, LLC Y OTROS<br><br>*Demandantes-Recurridos*<br><br>v.<br><br>SUPER ASPHALT PAVEMENT CORP. Y OTROS<br><br>*Demandados*<br><br>**MAPFRE PRAICO INSURANCE COMPANY**<br><br>*Peticionario* | | Consolidado con Caso Núm.: BY2025CV06574<br><br>Sobre: Cobro de Dinero-Ordinario y otros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de junio de 2026.

Comparece ante nos Mapfre Praico Insurance Company (Mapfre o peticionaria) mediante recurso de *Certiorari* y solicita que revoquemos la *Resolución*[1] emitida el 3 de abril de 2026[2] por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Moción en Solicitud de Reconsideración sobre Orden de Consolidación de Casos*[3] presentada por Mapfre.

---

[1] Apéndice 33 del recurso de *Certiorari*.
[2] Notificada el 6 de abril de 2026.
[3] Apéndice 31 del recurso de *Certiorari*.

Por los fundamentos que expondremos a continuación, **_denegamos_** el recurso de epígrafe.

**I.**

El caso de autos tuvo su génesis el 21 de noviembre de 2025, cuando Super Asphalt Pavement Corp. (Super Asphalt) y Asphalt Solutions Toa Alta, LLC. (AST) instaron una _Demanda_[4] en el caso número BY2025CV06164 sobre pago de lo indebido en contra de Tallaboa PR, LLC. (Tallaboa o recurrido). Posteriormente, el 19 de diciembre de 2025, el recurrido instó una _Demanda_[5] en el caso núm. **BY2025CV06574** sobre cobro de dinero e incumplimiento de contrato en contra de Super Asphalt, Asphalt Solutions y su aseguradora Mapfre.

Por su parte, el 4 de febrero de 2026, la peticionaria presentó una _Moción Solicitando Exposición más Definida_[6]. En la misma, adujo que la reclamación presentada por Tallaboa adolecía de deficiencias, toda vez que, se limitó a afirmar de manera general que suplió productos de asfalto desde el año 2022 para ciertos proyectos en Puerto Rico. Esto, sin identificar los proyectos específicos involucrados, cuáles estaban cubiertos por sus fianzas, los números de dichas fianzas, los materiales alegadamente suplidos, cantidades, fechas de entrega, fecha del último suministro, términos de pago incumplidos, transacciones particulares, la base contractual para reclamarles, ni la entidad principal responsable de cada parte de la deuda reclamada. Además, sostuvo que tales omisiones eran críticas en una reclamación bajo fianza de pago, donde correspondía al reclamante alegar y probar que los materiales fueron suministrados e incorporados a una obra específica afianzada. Finalmente, arguyó que dichas alegaciones vagas y

---

[4] Entrada núm. 1 del expediente del Tribunal de Primera Instancia (TPI) del caso núm. BY2025CV06164.
[5] Entrada núm. 1 del expediente del TPI del caso núm. BY2025CV06574.
[6] Entrada núm. 18 del expediente del TPI del caso núm. BY2025CV06574.

ambiguas no eran meros defectos de forma, sino fallas sustantivas que lo colocaban en estado de indefensión procesal, al impedirle determinar si existía alguna obligación bajo una fianza particular, evaluar defensas disponibles y presentar una contestación informada y conforme a derecho.

Tras varios incidentes procesales, el 26 de marzo de 2026, en el caso BY2025CV06164, los abogados de Super Asphalt, AST y Tallaboa le plantearon al foro recurrido que los casos debían consolidarse[7]. Es por ello que, ese mismo día, el recurrido sometió una *Moción de Consolidación*[8]. En ésta, esbozó que en el caso núm. BY2025CV06164 se solicitó la devolución de ciertas cantidades pagadas por Super Asphalt y AST bajo un *Forbearance Agreement*[9] otorgado por las partes el 27 de marzo de 2024. En el acuerdo, se estipuló la existencia de una deuda de nueve millones seiscientos treinta y un mil cuatrocientos cinco dólares ($9,631,405.00) por parte de Super Asphalt y AST a favor de Tallaboa, por concepto de asfalto vendido, que fue utilizado por éstas para proyectos del gobierno. El acuerdo fue renovado el 19 de marzo de 2025 por un año adicional, sin embargo, Tallaboa alegó que Super Asphalt y AST incumplieron con el plan pactado y el acuerdo expiró el 19 de marzo de 2026. Así pues, el recurrido adujo que Super Asphalt y AST le adeudaban cuatro millones quinientos treinta y un mil cuatrocientos cinco dólares con cincuenta y un centavos ($4,531,405.51) y que, si no se acreditaban los pagos, la deuda ascendería a seis millones trescientos veintiún mil treinta y cinco dólares con once centavos ($6,321,035.11). Además, indicó que el 19 de diciembre de 2025, instó una *Demanda* de cobro de dinero contra Super Asphalt, AST y su fiadora, Mapfre, en el caso núm.

---

[7] Entrada núm. 30 del expediente del TPI del caso núm. BY2025CV06164, *Minuta*.
[8] Apéndice 20 del recurso de *Certiorari*.
[9] Entrada núm. 1 del expediente del TPI del caso núm. BY2025CV06164, Anejo *Forbearence Agreement*.

BY2025CV06574, por lo que sostuvo que ambos casos estaban relacionados y solicitó la consolidación de las acciones, al ser éste el procedimiento más antiguo.

Evaluado el petitorio, el 27 de marzo de 2026, el TPI emitió y notificó una *Orden de Consolidación*[10] en la cual dictaminó lo siguiente:

> En virtud de la Regla 38.1 de Procedimiento Civil, 32 LPRA Ap. V, y toda vez que la parte demandante expresó su conformidad durante la vista celebrada el 26 de marzo de 2026, se ordena la consolidación del caso de epígrafe con el caso BY2025CV06574, asignado a la Sala 505, pues ambos surgen del mismo núcleo fáctico. Consecuentemente, los procedimientos continuarán en la Sala 502 y se ordena a las partes que en lo sucesivo todos los escritos sean radicados bajo el número BY2025CV06164, por ser el pleito de mayor antigüedad. Únase copia de la presente orden al expediente electrónico en SUMAC del caso BY2025CV06574.

Inconforme con el dictamen, el 1 de abril de 2026, Mapfre presentó una *Moción en Solicitud de Reconsideración sobre Orden de Consolidación de Casos*[11]. Allí arguyó que no procedía la consolidación de los pleitos debido a que los casos eran completamente distintos y no cumplían con la Regla 38.1 de las de Procedimiento Civil, *infra*, pues surgían de contratos diferentes y se regían por bases legales distintas. Señaló, además, que en el caso BY2025CV06164 Super Asphalt y AST reclamaban contra Tallaboa por alegados pagos indebidos bajo un *Forbearance Agreement*, así como fraude, conflictos de interés y manejo impropio de negociaciones entre entidades con dueños y administradores comunes. En contraste, sostuvo que la *Demanda* de Tallaboa contra ella pretendía imputarle responsabilidad bajo varias fianzas emitidas a favor de Super Asphalt y AST por supuestas deudas relacionadas con productos de asfalto, aun cuando Tallaboa admitió no conocer en qué proyectos, si alguno, dichos productos fueron incorporados. Añadió que, conforme a la ley y jurisprudencia

---

[10] Apéndice 26 del recurso de *Certiorari*.
[11] Apéndice 31 del recurso de *Certiorari*.

aplicable a fianzas en obra pública, Tallaboa tenía que alegar y probar cuánto se adeudaba en cada proyecto afianzado y que reclamó primero al dueño de la obra pública sin lograr satisfacción, extremos que no alegó. Finalmente, la peticionaria sostuvo que consolidar los casos la perjudicaría.

Por su lado, el 2 de abril de 2026, el recurrido sometió su *Oposición a Moción de Reconsideración de Mapfre*[12] en la cual solicitó que se mantuviera la consolidación de los casos relacionados con la deuda por suministro de asfalto adeudada por Super Asphalt y AST. Alegó que ambos pleitos compartían controversias de hecho y derecho, ya que la reclamación de devolución de pagos indebidos presentada por Super Asphalt afectaba directamente la cuantía reclamada en el caso de cobro de dinero. Asimismo, sostuvo que Mapfre participó en la negociación del plan de pago y los acuerdos de *Forbearance Agreement.* Finalmente, argumentó que la consolidación no perjudicaba a Mapfre, pues ésta no era parte en el caso de pago de lo indebido, por lo que solicitó que se denegara la reconsideración.

Evaluadas las posiciones de las partes, el 3 de abril de 2026[13], el TPI emitió una *Resolución*[14] en la cual declaró *No Ha Lugar* la solicitud de reconsideración presentada por Mapfre. Insatisfecha aun, el 5 de mayo de 2026, la peticionaria acudió ante este foro intermedio y le imputó al foro recurrido los siguientes señalamientos de error:

> Primer Error: El TPI cometió un error manifiesto de derecho al conceder la consolidación sin otorgarle el derecho a ser oído a MAPFRE, conforme el debido proceso de ley.
>
> Segundo Error: El TPI abusó de su discreción al ordenar la consolidación sin evaluar si dicha medida ataría a MAPFRE a un litigio complejo y prolongado entre Super Asphalt y Tallaboa sobre controversias de fraude, doble facturación y Conflictos de Intereses de las cuales no forma parte con controversias fácticas y jurídicas, prueba y remedios

---

[12] Apéndice 32 del recurso de *Certiorari.*
[13] Notificada el 6 de abril de 2026.
[14] Apéndice 33 del recurso de *Certiorari.*

distintos a los que envuelven típicamente las reclamaciones bajo las fianzas causándole dilaciones, gastos y perjuicios innecesarios.

El 6 de mayo de 2026[15], emitimos una *Resolución* en la cual le concedimos al recurrido diez (10) días para mostrar causa por la cual no se debía expedir el recurso presentado. En cumplimiento con lo anterior, el 13 de mayo de 2026, Tallaboa sometió una *Moción en Cumplimiento de Orden y Oposición a Solicitud de Certiorari de Mapfre*. Allí argumentó que la consolidación de ambos casos fue una determinación discrecional y razonable del TPI, dirigida a promover la economía procesal y evitar decisiones inconsistentes. Esto, debido a que las acciones surgían de la misma deuda y de los mismos documentos, y el resultado de un caso afectaba directamente la cuantía reclamada en el otro. Además, sostuvo que la consolidación se ordenó en una etapa temprana de los litigios, que las deudoras principales favorecieron dicha consolidación y que Mapfre tuvo oportunidad de presentar sus objeciones mediante una moción de reconsideración, la cual fue atendida y denegada. Finalmente, se esbozó que la consolidación no le ocasionaba perjuicio a Mapfre, pues no se le requería participar en el caso donde no se reclamaba remedio en su contra y cualquier posible perjuicio podía atenderse mediante órdenes del tribunal.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[16]. La determinación de

---

[15] Notificada el 7 de mayo de 2026.

[16] Véase, *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial[17]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[18]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[19].

La Regla 40 del Reglamento del Tribunal de Apelaciones[20], establece los criterios que este foro debe tomar en consideración al entender o no en los méritos los asuntos planteados mediante un recurso de *certiorari.* La aludida regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

En lo pertinente a este caso, el *certiorari* también es el recurso

---

[17] *Íd.*
[18] *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).
[19] *Íd.*
[20] 4 LPRA XXII-B, R. 40.

apropiado para solicitar la revisión de determinaciones postsentencia[21]. A esos efectos, el Tribunal Supremo expresó que:

> Las resoluciones atinentes a asuntos postsentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia[22].

### -B-

Como es conocido, nuestro ordenamiento jurídico procesal promueve la solución, justa rápida y económica de los procedimientos judiciales[23]. De igual modo, "[u]n principio cardinal de nuestro derecho procesal es el de evitar la multiplicidad de pleitos, y de adjudicar en una causa las distintas reclamaciones de las partes cuando la naturaleza de las causas lo permiten"[24].

Así, uno de los mecanismos para lograr la economía procesal es la consolidación de los casos. Ello, con el fin de evitar la proliferación de las causas de acción entre las mismas partes, y de esta manera impedir que surjan fallos incompatibles de un mismo incidente[25].

El mecanismo de consolidación surge de la Regla 38.1 de las de Procedimiento Civil[26], la cual establece que:

> Cuando estén pendientes ante el tribunal pleitos que comprendan cuestiones comunes de hechos o de derecho, el tribunal podrá ordenar la celebración de una sola vista o juicio de cualquiera o de todas las cuestiones litigiosas comprendidas en dichos pleitos, podrá ordenar que todos los pleitos sean consolidados y podrá dictar, a este respecto, aquellas órdenes que eviten gastos o dilaciones innecesarias.

De la precitada regla, surgen dos (2) requisitos para que proceda inicialmente una solicitud de consolidación; a saber, que

---

[21] *IG Builders et al. v. BBVAPR, supra*, pág. 339.
[22] *Íd.*
[23] Regla 1 de Procedimiento Civil, 32 LPRA Ap. V., R. 1.
[24] *Vives Vázquez v. E.L.A.*, 142 DPR 117, 125 (1996).
[25] *Crespo Quiñones v. Santiago Velázquez*, 176 DPR 408, 416 (2009).
[26] 32 LPRA Ap. V, R.38.1

los casos presenten cuestiones de hechos o de derecho en común, y que los casos estén pendientes ante el Tribunal[27]. Así pues, cuando el juzgador tiene ante sí este tipo de solicitud, debe analizar si de acuerdo con las circunstancias particulares del caso, dicho mecanismo promueve la buena administración de la justicia, la aceleración en la resolución de disputas y la reducción en los costos de la litigación[28]. Referente a la frase, "[c]uando estén pendientes ante el tribunal" dispuesta en dicha regla, solamente quiere decir que los casos en cuestión se hayan presentado y su trámite está pendiente ante alguna de las salas del foro primario[29]. Además de estos requerimientos, para que proceda la consolidación de acciones o recursos no es necesario que la totalidad de las cuestiones de hecho y de derecho sean idénticas[30]. De ordinario, las acciones a consolidarse son de igual naturaleza, a pesar de que ello no es un requisito indispensable para concederla. Tampoco se requiere que haya identidad entre las partes, "aunque es un aspecto que puede pesar sobre el ánimo del juzgador al tomar la determinación"[31].

En esa misma línea, existen otros criterios que el Tribunal debe tomar en cuenta para la consolidación de los casos como el perjuicio, la etapa procesal y la complejidad de los casos. Lo importante es que:

> En todo caso la decisión es circunstancial y requiere medir todas las consideraciones a favor y en contra de la consolidación, prestando particular atención a los hechos que tenga ante sí el juzgador en relación con todos los casos respecto a los cuales se solicita la misma. Es el balance de todas las consideraciones lo que determina la decisión[32].

De haber una posibilidad de perjuicio, ello no impide necesariamente la concesión de la consolidación, sino que, ante una alegación de perjuicio por una de las partes, el Tribunal debe hacer

---

[27] *Crespo Quiñones v. Santiago Velázquez*, 176 DPR 408, 416 (2009).
[28] *M-Care Compounding et al. v. Depto. Salud*, 186 DPR 159, 172 (2012).
[29] *Vives Vázquez v. E.L.A.*, *supra*, pág. 135.
[30] *Hosp. San Fco., Inc. v. Sria. de Salud*, 144 DPR 586, 593 (1997).
[31] *Vives Vázquez v. E.L.A.*, *supra*, págs. 127-128.
[32] *Íd.*, pág. 137.

un balance de los intereses envueltos y ponderar el supuesto perjuicio, el cual debe ser real, no subjetivo vis-à-vis el interés de que se logre una solución justa, rápida y económica[33]. Otro factor para considerar es el momento en el cual se solicita la consolidación de los pleitos. El Tribunal debe tomar en cuenta la existencia de mociones potencialmente dispositivas de las acciones que están pendientes ante los tribunales; si se han presentado todas las alegaciones requeridas por las Reglas de las de Procedimiento Civil; el descubrimiento de prueba a efectuarse o efectuado; y cualquier otra consideración respecto al desarrollo procesal de los pleitos que pueda ofrecer criterios al juzgador para guiar su ánimo. El Tribunal debe tomar en consideración la complejidad de los casos, de ser pertinente[34]. Lo anterior pues, la "consolidación ha sido citada como uno de los mecanismos a seguir para atender adecuadamente casos complejos, ya por la naturaleza de las controversias que presentan o por la multiplicidad de partes"[35]. Asimismo, el juzgador debe considerar la consolidación si tiende a evitar resultados incompatibles entre las distintas controversias que presenten cuestiones similares de hecho o de derecho[36].

De haber una posibilidad de perjuicio, ello no impide necesariamente la concesión de la consolidación, sino que, ante una alegación de perjuicio por una de las partes, el Tribunal debe hacer un balance de los intereses envueltos y ponderar el supuesto perjuicio, el cual debe ser real, no subjetivo vis-à-vis el interés de que se logre una solución justa, rápida y económica[37].

Cónsono con lo anterior, es el juzgador quien cuenta con una amplia discreción para determinar la procedencia de una solicitud de consolidación, a la luz de hechos y circunstancias particulares

---

[33] *Íd.*, págs. 136-137.
[34] *Íd.*, pág. 137.
[35] *Íd.*, págs. 137-138.
[36] *Hosp. San Fco., Inc. v. Sria. de Salud, supra*, pág. 593.
[37] *Íd.*, págs. 136-137.

que tiene ante su consideración. Ahora bien, el tribunal debe analizar si dicha petición propendiese a una resolución justa, rápida y económica de las acciones e igualmente evitar resultados inconsistentes entre las distintas disputas que presenten cuestiones similares de hecho o de derecho[38].

Ante ello, una vez el tribunal sentenciador realiza "[u]na determinación [judicial inicial] sobre una solicitud de consolidación, efectuada luego de un análisis ponderado de la totalidad de las circunstancias de los casos cuya consolidación se solicita, merecerá gran deferencia por parte del tribunal que la revise"[39]. El Tribunal Supremo de Puerto Rico ha resuelto que dicha determinación solo será alterada cuando el juez haya omitido considerar algún factor importante o cuando de alguna otra forma incurra en un abuso de su discreción[40].

**III.**

En su recurso, Mapfre adujo que el TPI cometió un error manifiesto de derecho al consolidar los casos sin concederle el derecho a ser oída y sin evaluar si dicha medida la ataría a un litigio complejo y prolongado entre Super Asphalt y Tallaboa.

Por su parte, Tallaboa adujo que la consolidación fue una decisión discrecional y razonable del TPI para promover la economía procesal, ya que ambos casos surgían de la misma deuda y estaban interrelacionados. Además, alegó que la consolidación se ordenó tempranamente, que Mapfre pudo oponerse y que la misma no le causaba perjuicio alguno.

Tras un análisis minucioso de los escritos de las partes y la *Resolución* recurrida, colegimos que no procede expedir el auto solicitado. La determinación de consolidar los casos

---

[38] *Hosp. San Fco., Inc. v. Sria. de Salud*, supra, pág. 593.
[39] *M-Care Compounding et al. v. Depto. Salud*, 186 DPR 159, 172 (2012).
[40] *Íd.*, a las págs. 172-173.

BY2025CV06164 y BY2025CV06574 al amparo de la Regla 38.1 de las de Procedimiento Civil, *supra,* constituye una facultad discrecional del foro recurrido, la cual no debe ser alterada en - el presente caso, surge del expediente que ambos pleitos comparten controversias fácticas y documentales relacionadas con la alegada deuda por suplido de asfalto, el plan de pago suscrito entre las partes y los acuerdos de *Forbearance,* así como el posible efecto que la reclamación de pago de lo indebido pudiera tener sobre la cuantía reclamada en el pleito de cobro de dinero. Ello justifica la conclusión del TPI de que la consolidación adelanta la economía procesal y evita adjudicaciones inconsistentes.

Ahora bien, aunque Mapfre argumenta que no tuvo oportunidad inicial de oponerse a la consolidación, el expediente refleja que posteriormente presentó una moción de reconsideración en la que pudo exponer ampliamente sus argumentos, los cuales fueron considerados y rechazados por el foro recurrido. Así, no advertimos un perjuicio real, concreto e irreparable ni un abuso de discreción que amerite nuestra intervención en esta etapa de los procedimientos. Por ende, al haber considerado los hechos del caso de marras, no estamos convencidos que se cumple con alguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**IV.**

Por los fundamentos antes expuestos, ***denegamos*** el recurso de *certiorari* de epígrafe. Se devuelve el caso al foro de instancia para la continuación de los procedimientos[41].

---

[41] Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato. La Regla 35 (A)(1) dispone: "La presentación de una solicitud de *certiorari* **no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones**. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, salvo que el Tribunal de Apelaciones disponga lo contrario".

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones